[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11895
Non-Argument Calendar
_____

Agency No. A078-345-050


ANTONIA LARGAESPADA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 29, 2013)


Before WILSON, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Antonia Largaespada, a Nicaraguan citizen that entered the United States in the early 1990s, seeks review of the Board of Immigration Appeals' (BIA) decision affirming the Immigration Judge's (IJ) order denying her applications for adjustment of status under the Nicaraguan Adjustment and Central American Relief Act (NACARA), Pub. L. No. 105–100, § 202, 111 Stat. 2160, 2193 (1997); Temporary Protected Status (TPS); asylum under the Immigration and Nationality Act (INA) § 208(a), 8 U.S.C. § 1158(a); withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3); and withholding of removal under the United Nations Convention Against Torture (CAT), 8 C.F.R. § 208.16(c).[1]

Before we can discuss their merits, we must establish whether we have jurisdiction over Largaespada's various claims.  We review our subject matter jurisdiction de novo.  Frech v. United States Att'y Gen., 491 F.3d 1277, 1280 (11th Cir. 2007).

## I.  DISCUSSION

### A.

---

[1]  The government argues that Largaespada has "abandoned any challenge to the Board's decision" because "her brief omits citations to the certified administrative record that would support her arguments."  Although we may decline to exercise jurisdiction where a petitioner fails to comply with Federal Rule of Appellate Procedure 28(a)(9)(A), we are not required to do so and will not do so here.  See Mendoza v. United States Att'y Gen., 327 F.3d 1283, 1286 n.4 (11th Cir. 2003).  Largaespada "specif[ies] the underlying facts upon which [she] bases [her] arguments, and those facts are readily ascertainable in the . . . record," so we exercise our discretion to consider her petition.  See id.

Largaespada's first contention is that the BIA and IJ each "erred when they found that [she] was not eligible for adjustment of status pursuant to NACARA." By statute, our review of final orders of removal is limited to instances where "the alien has exhausted all administrative remedies available . . . as of right." 8 U.S.C. § 1252(d)(1). We have interpreted this provision to mean that we also "lack jurisdiction to consider a <u>claim</u> raised in a petition for review unless the petitioner has exhausted his administrative remedies with respect thereto," regardless of whether the BIA has addressed the claim <u>sua sponte</u>. <u>Amaya-Artunduaga v. United States Att'y Gen.</u>, 463 F.3d 1247, 1250–51 (11th Cir. 2006) (emphasis added).

Largaespada did not raise her claim for adjustment of status under NACARA in her appeal to the BIA. Based on our precedent, we lack jurisdiction to review that claim, even though the BIA addressed it <u>sua sponte</u>. <u>Id.</u>

### B.

Next, Largaespada contends that both the BIA and IJ were wrong in determining that she is not eligible for TPS. We have jurisdiction to review the denial of TPS based on a determination that an alien is statutorily ineligible. <u>Mejia Rodriguez v. United States Dep't of Homeland Sec.</u>, 562 F.3d 1137, 1144–45 (11th Cir. 2009). "We review only the Board's decision, except to the extent that it expressly adopts the IJ's opinion. Insofar as the Board adopts the IJ's reasoning,

3

we will review the IJ's decision as well." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (citation omitted).

TPS may be granted when the Secretary of the Department of Homeland Security (Secretary) "determines that certain conditions exist in a country . . . that results in a substantial, but temporary, disruption of living conditions in the area affected, and designates that foreign state for inclusion in the TPS program." Mejia Rodriguez, 562 F.3d at 1140 (quotation marks and footnote omitted). An alien is eligible for TPS if she is a national of the country designated for TPS, and: (1) has been continuously physically present in the United States since the effective date designating that country for such status; (2) has continuously had a residence in the United States since the date designated by the Secretary; (3) is admissible to the United States as an immigrant, or has established her eligibility for a waiver of inadmissibility; and (4) registers during the initial registration period designated by the Secretary. See 8 U.S.C. § 1254a(c). Where an alien failed to register for TPS during the initial registration period, she may apply for late registration "[d]uring any subsequent extension of such designation" if she establishes, among other things, that "at the time of the initial registration period . . . [she had] an application for change of status, adjustment of status, asylum, voluntary departure, or any relief from removal . . . pending or subject to further review or appeal." See 8 C.F.R. § 1244.2(f)(2).

4

Nicaragua was first designated for inclusion in the TPS program on January 5, 1999 due to devastation caused by Hurricane Mitch. See Designation of Nicaragua Under Temporary Protected Status, 64 Fed. Reg. 526-01 at 526 (Jan. 5, 1999). The initial TPS registration period ran until July 5, 2000. Id. Later, the registration period was extended to August 20, 1999. See Extension of the Registration Period for Hondurans and Nicaraguans Under the Temporary Protected Status Program, 64 Fed. Reg. 42991-02 at 42991 (Aug. 6, 1999). Since then, Nicaragua's TPS designation has been extended a number of times, most recently on November 4, 2011. See Extension of the Designation of Nicaragua for Temporary Protected Status and Automatic Extension of Employment Authorization Documentation for Nicaraguan TPS Beneficiaries, 76 Fed. Reg. 68493 at 68493 (Nov. 4, 2011).

The IJ found that Largaespada did not qualify for TPS because she failed to register during the initial registration period of January 5 to July 5, 1999, and she had no applications for adjustment of status pending prior to 2000. The BIA adopted and affirmed the IJ's determination, adding that Largaespada "provided no reasonable basis" for her claim on appeal that "she qualifie[d] as a late registrant because she 'honestly believed' that she had a pending NACARA application during the initial [TPS] registration period for Nicaragua in 1999."

5

The IJ's determination of when Largaespada applied for adjustment of status, and the BIA's determination that no reasonable basis supported Largaespada's claim that she honestly believed she had previously applied for adjustment of status under NACARA, are each questions of fact.  "[T]he IJ's factual determinations are reviewed under the substantial evidence test, and we must affirm the IJ's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Ruiz v. United States Att'y Gen., 440 F.3d 1247, 1254-55 (11th Cir. 2006) (quotation marks and alterations omitted); see also § 1252(b)(4)(B) ("[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . .").  "Under the substantial evidence test, we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision."  Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035, 125 S. Ct. 2245, (2005).  "We can reverse a finding of fact by the BIA only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."  Mehmeti v. United States Att'y Gen., 572 F.3d 1196, 1199 (11th Cir. 2009) (quotation marks omitted).

6

Largaespada does not dispute the IJ's determination that she failed to apply for TPS during the initial registration period. Instead, she reasserts the claim that she made on appeal to the BIA—that she "honestly believed that she had an application for Adjustment of Status pending at the time of the initial period for registration under TPS"—and adds that the BIA "violated her Constitutional right to Due Process" by "overlooking the uncontroverted AFFIDAVIT" she submitted in support of that belief.

Largaespada's argument fails. First, the plain language of the regulation governing late registration for TPS requires that an application for adjustment of status be "pending" at the time of the initial registration period, not that a person merely believed that an application was pending. See 8 C.F.R. § 1244.2(f)(2)(ii). But even if we assume without deciding that an alien's honest belief that she filed an application would be enough to satisfy the requirements for late TPS registration, nothing in the record indicates that Largaespada actually filed an affidavit attesting to such a belief. At the same time, Largaespada submitted an affidavit stating that she applied for adjustment of status under NACARA on March 29, 2000, well beyond the August 20, 1999 extended deadline for TPS registration.

Having failed to provide the BIA with any evidence to support her claim that she "honestly believed" that an application for adjustment of status was pending,

7

and having provided the IJ with actual evidence that her application was filed only as of March 29, 2000, we cannot say that the record compels reversal on the BIA's determination that she "provided no reasonable basis for her belief that she filed an application" prior to or during the TPS registration window.  Likewise, insofar as there is nothing in the record to support her assertion that she "honestly believed that . . . in 1999 she had a pending application under NACARA," we cannot agree that "the Board and the Immigration Judge violated her Constitutional right to Due Process" by "overlooking" it.  For these reasons, Largaespada's argument that the BIA and IJ each erred in finding her ineligible for TPS relief fails.

## C.

Next, Largaespada contends that "[t]he Board and the Judge erroneously found that [she] waited too long a period of time to submit her asylum application and that [she] did not submit evidence that there was any exceptional circumstance or changed condition that would forgive her lack of filing."  Our law is clear, however, that we lack jurisdiction to review the BIA's determination that an asylum application was untimely filed.  8 U.S.C. § 1158(a)(3).  Our lack of jurisdiction extends both to the decision that the application was not filed within the one-year time limit for asylum applications, and the decision that the applicant did not establish extraordinary circumstances that would excuse the untimely filing

of her application.  Chacon-Botero v. United States Att'y Gen., 427 F.3d 954, 957 (11th Cir. 2005).  We therefore lack jurisdiction to consider this claim.

### D.

Finally, Largaespada argues that the BIA and IJ each erred in denying her application for withholding of removal and CAT relief based on the IJ's adverse credibility determination.  Contrary to the IJ's assessment that she "was not a credible witness" at her removal proceeding, Largaespada contends that her testimony was "plausible, detailed, internally consistent, . . . and unembellished."  Because the BIA expressly adopted the IJ's opinion, we review both the BIA's and the IJ's analysis.  Al Najjar, 257 F.3d at 1284.

A credibility determination is a factual determination.  Again, we review factual determinations under the substantial-evidence test and must affirm such determinations if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Ruiz, 440 F.3d at 1254–55.  "[W]e may not substitute our judgment for that of the IJ with respect to credibility findings," and "we review the record evidence in the light most favorable to the agency's decision."  Id. at 1255 (quotation marks and alterations omitted).  It is incumbent upon the IJ, however, to provide "specific, cogent reasons for an adverse credibility finding."  Id. (quotation marks omitted).  "Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's

9

credibility decision was not supported by specific, cogent reasons, or was not based on substantial evidence." Id. (quotation marks and alterations omitted).

Here, the IJ supported her adverse credibility determination with specific, cogent reasons. The IJ noted "a number of discrepancies" between Largaespada's written application for relief and her testimony at her removal hearing. These discrepancies included the year Largaespada left Nicaragua; when she arrived in Honduras en route to the United States; when her common-law husband deserted the Sandinista military and whether he was murdered or disappeared after he deserted; whether or not she saw her husband and conceived a child with him after he deserted; and what kind of problems, if any, she and her family members had with the Nicaraguan government. In adopting and affirming the IJ's determination, the BIA reiterated Largaespada's "inconsistencies and vague statements . . . concerning when [her] husband deserted the army, what happened to him afterwards, and when [she] left Nicaragua."

Other than to note that her testimony was about events that "occurred more than 20 years ago" Largaespada provides no explanations for her inconsistent testimony. Thus, she has failed to show that the "IJ's credibility decision was not supported by specific, cogent reasons, or was not based on substantial evidence," and her argument that the IJ and BIA each erred in determining that she was not a

10

credible witness is not persuasive.[2]  Ruiz, 440 F.3d at 1255 (quotation marks and alterations omitted).

"If the applicant produces no evidence other than his testimony, an adverse credibility determination is alone sufficient to support the denial of an . . . application."  See Forgue v. United States Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005).  Substantial evidence supports the IJ's adverse credibility determination here.  Also, to the extent that Largaespada failed to produce corroborating evidence for the IJ to consider and the IJ found her testimony was not credible, substantial evidence also supports the IJ's denial of Largaespada's withholding of removal and CAT claims.  See id. at 1287–88.

## II.    CONCLUSION

For these reasons, Largaespada's petition is

**DISMISSED** in part, and **DENIED** in part.

---

[2]  Largaespada also suggests that the IJ's adverse credibility determination was informed by the IJ's "years [of] clear hostility" towards her lawyer.  This argument fails as well.  First, it does nothing to explain the inconsistencies in Largaespada's testimony.  Second, to the extent that it is intended to suggest a due process claim, the BIA correctly noted that Largaespada has failed to demonstrate "that she was deprived of liberty without due process of law and that the purported errors caused her substantial prejudice," as is required to prove a due process violation.  Lapaix v. United States Att'y Gen., 605 F.3d 1138, 1143 (11th Cir. 2010).

11